1   ANDREW HALE (Attorney No. 163702)
    **HALE & MONICO, LLC**
2   53 WEST JACKSON, SUITE 337
    CHICAGO, IL 60604
3   TELEPHONE : (312) 500-2951
    EMAIL : ANDY@HALEMONICO.COM
4
5   ATTORNEY FOR PLAINTIFFS
6
7               **UNITED STATES DISTRICT COURT**
                **SOUTHERN DISTRICT OF CALIFORNIA**
8
9   GERALD KEELER,                         )  Case No.:   **'21 CV1981 CAB WVG**
                                           )
10              Plaintiff,                 )  **COMPLAINT**
                                           )
11      vs.                                )
                                           )
12  COUNTY OF SAN DIEGO, SAN DIEGO         )
    SHERIFF'S DEPARTMENT, SAN DIEGO        )
13  SHERIFF GORE, DEPUTY McCORMICK,        )
    DEPUTY ROSE, DEPUTY DELIMA, and        )
14  DEPUTY BARAJAS,                        )
                                           )
15                                         )
                Defendants.                )
16                                         )
                                           )
17  _____

18                        **COMPLAINT**

19      Plaintiff Gerald Keeler, through his attorneys Hale & Monico, LLC, complaining of

20  Defendants County of San Diego, San Diego Sheriff's Department, San Diego Sheriff William

21  Gore, and San Diego Sheriff Deputies Evan McCormick, Rose, Brandon Delima, and Katherine

22  Barajas, states as follows:

23                        **INTRODUCTION**

24      **1.**  On February 6, 2020, Gerald and his wife Josephine had spent a peaceful evening with their

25  son Michael and his wife Raychel. The tranquil evening was shattered, however, by illegal and

26  unconstitutional actions of members of the San Diego Sheriff's Department.

27      **2.**  These officers had no lawful basis to enter onto Gerald's property as they had neither a

28  search warrant nor an arrest warrant for anyone suspected of being on the property. Indeed, the sole

                            - 1 -

basis for the officers' presence on Gerald's property were that they were looking for Gerald's adult son Julius, who had not lived on the property for many years; a fact these officers either knew or should have known.

3.   These officers, without cause or justification, falsely arrested and used excessive force against Michael, and viciously slandered Gerald by referring to his family home as a "meth house" to Michael's wife.

4.   Gerald brings this lawsuit to not only seek redress for the actions against him but to shine a light on the unconstitutional actions by members of the San Diego Sheriff's Department.

## JURISDICTION AND VENUE

5.   The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367 as Plaintiffs assert causes of action pursuant to 42 U.S.C. § 1983 and causes of action pursuant to California law that arise from the same controversy.

6.   The Court has personal jurisdiction over all Defendants in this action as, upon information and belief, all are domiciled in the State of California.

7.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as the events giving rise to this action occurred in the County of San Diego, which is located in the Southern District of California.

## PARTIES

8.   Plaintiff Gerald Keeler is a United States citizen and California resident and was, during the relevant time, domiciled in the County of San Diego. Gerald is an African-American man.

9.   Defendant County of San Diego ("County") is a municipal entity duly organized under California law.

10. The San Diego County Sheriff's Department ("Department") is a department of the County and is the chief law-enforcement agency for the County.

11. Defendant William Gore ("Sheriff Gore") is the Sheriff of San Diego County and, as such, is the final policymaker for the Sheriff's Department. In his capacity, Sheriff Gore is responsible for training and supervising sheriff's deputies under his command and implementing the policies of the Department. Sheriff Gore is sued in his official capacity as the final policymaker.

**12.** Defendant Evan McCormick was, during the relevant time, employed by the Sheriff's Department and acted within the scope of his employment and agency with the Department. Defendant McCormick acted under color of law during his interactions with Plaintiffs. Defendant McCormick is sued in his individual capacity.

**13.** Defendant Rose was, during the relevant time, employed by the Sheriff's Department and acted within the scope of his employment and agency with the Department. Defendant Rose acted under color of law during his interactions with Plaintiffs. Defendant Rose is sued in his individual capacity.

**14.** Defendant Brandon Delima was, during the relevant time, employed by the Sheriff's Department and acted within the scope of his employment and agency with the Department. Defendant Delima acted under color of law during his interactions with Plaintiffs. Defendant Delima is sued in his individual capacity.

**15.** Defendant Katherine Barajas was, during the relevant time, employed by the Sheriff's Department and acted within the scope of her employment and agency with the Department. Defendant Barajas acted under color of law during her interactions with Plaintiffs. Defendant Barajas is sued in her individual capacity.

## COMPLIANCE WITH CALIFORNIA CLAIMS FILING REQUIREMENTS

**16.** On April 10, 2020, Plaintiff Gerald Keeler filed timely claims for damages with the Court pursuant to the applicable sections of California Government Code §§ 900 *et seq*. The County did not act on Plaintiff's claims within forty-five (45) days. Accordingly, it was deemed denied by operation of law pursuant to Government Code §§ 905, 905.2, and 945.4.

**17.** Accordingly, Plaintiff has complied with all requirements of California Government Code §§ 900 *et seq* and this Complaint is timely.

## FACTS

**18.** On February 6, 2020, Michael Keeler and his wife Raychel were at the home of Gerald and Josephine Keeler in Fallbrook, California.

1    **19.** At approximately 7:00 PM, Michael and Raychel were outside when they noticed four San

2    Diego Sheriff's Deputies approaching them on foot: Defendants McCormick, Rose, Delima, and

3    Barajas.

4    **20.** These officers were armed with flashlights and appeared to be searching the property by

5    looking in Gerald's garages.

6    **21.** Michael approached the officers and asked if they needed help with anything.

7    **22.** Defendant McCormick asked who lived at the residence and Michael responded that it was

8    his family's home.

9    **23.** Defendant McCormick demanded Michael's first and name and Michael responded

10   truthfully.

11   **24.** Defendant McCormick told Michael Keeler that there was a warrant for his arrest.

12   **25.** There was no warrant for Michael's arrest.

13   **26.** Upon information and belief, Defendants had a warrant for Julius Keeler, Michael's brother.

14   Julius Keeler is 6 foot 5 inches tall and weighs roughly 240 pounds. Julius also has visible tattoos,

15   including several on his neck. Michael, on the other hand, is 5 foot 11 inches tall and weights 175

16   pounds, with no tattoos. In other words, Julius and Michael look nothing alike.

17   **27.** Julius Keeler had not resided at Gerald and Josephine's home for many years. There was no

18   reasonable basis for Defendant Officers to enter onto Gerald and Josephine's property looking for

19   Julius.

20   **28.** In August 2019, law enforcement officers had come to Gerald's property and inquired about

21   Julius Keeler. At that time, Gerald informed the law enforcement officers that Julius did not reside

22   at that property.

23   **29.** Michael was then arrested and placed into handcuffs by Defendants.

24   **30.** Raychel was present and was pleading with the Defendants that they had the wrong person.

25   **31.** At some point, Defendant McCormick reached his arm around Michael's neck, cutting off

26   the circulation. Michael felt Defendant McCormick lift until Michael's feet were off the ground.

27   The Sheriff's Department calls this technique a "carotid neck restraint" but everyone else knows it

28   as a chokehold.

**32.** Raychel was pleading with the officers to let her husband go as Defendant McCormick used the choke hold.

**33.** The use of force by Defendant McCormick was unreasonable based on the totality of the circumstances.

**34.** Defendants Rose, Delima, and Barajas did not intervene to prevent Defendant McCormick's unreasonable use of force.

**35.** At some point, Gerald Keeler arrived.

**36.** Almost simultaneously with Gerald Keeler arriving, Defendant McCormick released Michael from the chokehold.

**37.** Gerald pleaded with the officers that Michael was not the person they were looking for and provided photographs showing that Michael and Julius were two different people. The officers ignored Gerald.

**38.** Defendant Barajas demanded Raychel answer why she was present at that residence. At that time, Defendant Barajas told Raychel that the house was a "meth house."

**39.** Defendant Barajas's comment to Raychel about Gerald and Josephine's family home being a "meth house" was false.

**40.** Raychel is white while Michael and Gerald are black.

**41.** Eventually Michael was taken to a Sheriff's station and booked into custody.

**42.** Gerald Keeler was never provided any type of documentation from the officers – warrant or otherwise – that would have justified their presence or search of Gerald's property.

**43.** The next day, Gerald and Josephine posted Michael's bond and Michael was taken to the hospital.

**44.** Michael had bruising and swelling in his neck due to the chokehold used by Defendant McCormick and injury to his wrists from the handcuffs. He continues to suffer physical and emotional injuries to this day.

**45.** Gerald Keeler suffered humiliation due to Defendant Barajas' false statement that Gerald's family home was a "meth house."

//

1  //

2  //

3                    **First Cause of Action**

4              **42 U.S.C. § 1983 – Unlawful Search**

5   **Plaintiff Gerald Keeler against Defendants McCormick, Rose, Delima, and Barajas**

6   **46.** Plaintiff incorporates all paragraphs of this complaint as though fully set forth herein.

7   **47.** The Fourth Amendment prohibits the unreasonable search of an individual's property.

8   **48.** Defendants McCormick, Rose, Delima, and Barajas did not have a valid search warrant for

9   Gerald's property.

10  **49.** There existed no exigency or emergency circumstances that justified Defendants'

11  unreasonable entry and search of Gerald's property.

12  **50.** As such, the entry and search of Gerald's property by Defendants McCormick, Rose,

13  Delima, and Barajas violated Plaintiff Gerald Keeler's rights under the Fourth Amendment.

14  **51.** Plaintiff Gerald Keeler was injured as a result of his constitutional rights being violated.

15      Wherefore, Plaintiff Gerald Keeler prays for a judgment in his favor and against Defendants

16  McCormick, Rose, Delima, and Barajas and for an award of compensatory and punitive damages,

17  attorneys' fees, costs, and any other relief that is just.

18                   **Second Cause of Action**

19      **California Law – Intentional Infliction of Emotional Distress**

20    **Plaintiff Gerald Keeler against Defendants Barajas and County of San Diego**

21  **52.** Plaintiffs incorporate all paragraphs of this complaint as though fully set forth herein.

22  **53.** Defendant Barajas told Michael's wife Raychel that Gerald's family home was a "meth

23  house" was conduct that exceeded the bounds of those tolerated in a civilized community.

24  **54.** This statement was either made with the intention to cause emotional distress or with the

25  realization that such an injury would result.

26  **55.** Specifically, Defendant Barajas implied that a white woman had no business being on the

27  property owned by a black family because Plaintiff was involved in some type of narcotics sales,

28  distribution, or use.

**56.** The racial undertone of Defendant Barajas' statement is transparent and obvious.

**57.** Due to the racism of the statement and Defendant Barajas' position as a law enforcement officer, this statement went beyond mere insults or indignity.

**58.** Gerald has suffered severe emotional distress as a result of Defendant Barajas' statement about Gerald that was directed towards his daughter-in-law.

**59.** Defendant County of San Diego is vicarious liable under California law for the acts and omissions of Defendant Barajas.

Wherefore, Plaintiff Gerald Keeler prays for a judgment in his favor and against Defendants Barajas and County of San Diego and for an award of compensatory and punitive damages, costs, and any other relief that is just.

**Third Cause of Action**

**California Law – Negligence**

**Plaintiff Gerald Keeler against Defendants McCormick, Rose, Delima, Barajas,**
**and County of San Diego**

**60.** Plaintiff incorporates all paragraphs of this complaint as though fully set forth herein.

**61.** Defendants McCormick, Rose, Delima, and Barajas owed a duty of care to members of the public to act reasonably and abide by the law.

**62.** Defendants McCormick, Rose, Delima, and Barajas had a duty to act with ordinary care and prudence so as not to cause harm or injury to another.

**63.** Defendants McCormick, Rose, Delima, and Barajas breached this duty by failing to use the ordinary care and skill in the scope of his employment as a law enforcement officer when they:

a.   Unlawfully entered onto Gerald Keeler's property without lawful justification;

b.   Unlawfully searched Gerald Keeler's property;

c.   Falsely arrested Gerald Keeler's son in his presence;

d.   Made false statement about Gerald Keeler and his family home to Raychel; and

e.   Otherwise acted negligently.

**64.** As a direct and proximate cause of Defendants McCormick, Rose, Delima, and Barajas' conduct, Plaintiff Gerald Keeler was injured.

1   **65.** Defendant County of San Diego is vicarious liable under California law for the acts and

2   omissions of Defendants McCormick, Rose, Delima, and Barajas.

3   Wherefore, Plaintiff Gerald Keeler prays for a judgment in his favor and against Defendants

4   McCormick, Rose, Delima, Barajas, and County of San Diego and for an award of compensatory

5   and punitive damages, costs, and any other relief that is just.

6   **Fourth Cause of Action**

7   **California Law – Trespass**

8   **Plaintiff Gerald Keeler against Defendants McCormick, Rose, Delima, Barajas,**

9   **and County of San Diego**

10   **66.** Plaintiff incorporates all paragraphs of this complaint as though fully set forth herein.

11   **67.** Plaintiff Gerald Keeler owned his property, family home, and garages.

12   **68.** Plaintiff's property has a "No Trespassing" sign on the fence.

13   **69.** Defendants McCormick, Rose, Delima, and Barajas entered onto Plaintiff's property without

14   a lawful justification do so.

15   **70.** Plaintiff did not consent to Defendants' entry onto his land.

16   **71.** Defendants' conduct constituted a trespass under California law.

17   **72.** Defendant County of San Diego is vicarious liable under California law for the acts and

18   omissions of Defendants McCormick, Rose, Delima, and Barajas.

19   Wherefore, Plaintiff Michael Keeler prays for a judgment in his favor and against Defendants

20   McCormick, Rose, Delima, Barajas, and County of San Diego and for an award of compensatory

21   and punitive damages, costs, and any other relief that is just.

22   **Fifth Cause of Action**

23   **California Law – Defamation**

24   **Plaintiff Gerald Keeler against Defendants Barajas and County of San Diego**

25   **73.** Plaintiffs incorporate all paragraphs of this complaint as though fully set forth herein.

26   **74.** Defendant Barajas made an oral statement to Raychel that Plaintiff Gerald Keeler's family

27   home was a "meth house."

28   **75.** Defendant Barajas' statement was false.

1    **76.** Defendant Barajas made the statement knowing the falsity thereof or without using

2    reasonable care to determine the truth or falsity thereof.

3    **77.** Defendant Barajas' statement was not privileged in any way.

4    **78.** Defendant Barajas' statement had a natural tendency to injure as it asserted that Plaintiff

5    Gerald Keeler and his wife Josephine either engaged in the sale of or used illicit narcotics.

6    **79.** The false statement made by Defendant Barajas has harmed Plaintiff Gerald Keeler's

7    reputation and caused Plaintiff to experience emotional distress and humiliation.

8    **80.** Defendant County of San Diego is vicarious liable under California law for the acts and

9    omissions of Defendant Barajas.

10    Wherefore, Plaintiff Gerald Keeler prays for a judgment in his favor and against Defendants

11    Barajas and County of San Diego and for an award of compensatory and punitive damages, costs,

12    and any other relief that is just.

13    <u>**JURY DEMAND**</u>

14    Plaintiff Gerald Keeler demands a trial by jury on all issues.

15

16

17    DATED: November 23, 2021

18    *Andrew Hale*
                                        Andrew Hale

19

20

21

22

23

24

25

26

27

28

COMPLAINT